

Name: KAIS MOHAMMAD
Prisoner No. 51761-509
FCI-Herlong
PO Box 800
Herlong, CA 96113

FILED
NOV 22 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

KAIS MOHAMMAD
Plaintiff-Petitioner

v.

Paul Thompson, in his capacity as Warden,
Federal Correctional Institution Herlong,
Bureau of Prisons,
Department of Justice, &
United States of America,
  Respondents

Case No. CV-21-tbd
Prior Case No. CR-

2:21-CV-2162 GGH HC

CONSOLIDATED MOTIONS
MOTION FOR 28 USC 2241 HABEAS CORPUS RELIEF UNDER THE FIRST STEP ACT
MOTION FOR EXPEDITED HEARING UNDER 28 USC 2243
MOTION FOR DECLARATORY RELIEF

Petitioner, a federal prisoner in pro se, files this motion under 28 USC 2241 today, or has already filed it (case number included above) as long ago as February 2021 and no court action has been taken yet. Motions for immediate relief and release from the Federal Correctional Institution ("FCI") Herlong are as old as eight months, yet in some cases the Department of Justice ("DOJ") has delayed appointing an attorney for their Bureau of Prisons ("BOP") to respond, causing irreparable harm by extending unlawful prison sentences. Petitioner is beyond his release date from custody at FCI Herlong or seeks a declaratory judgment defining earned credit to be applied to his future early release date. Petitioner states this controversy does not require a finding of facts as facts are not in dispute and the Court is only asked to make a legal determination on the executive branch's unreasonable statutory interpretation, thus administrative remedies do not need to be exhausted for a "narrow dispute of statutory construction" under Coleman v. U.S. Parole Commission, 644 F.3d 159,162 (3rd Cir. 2016) and Fraley v. United States Bureau of Prisons, 1 F.3d 924 (9th Cir. 1991).

Petitioner states his belief he has accrued at least __180__ days of earned time credits toward his early release from the __360__ days of prison work and the __NA__ days of recidivism reduction prison education under the First Step Act of 2018 ("Act"), and his release date under the law should be __11-20-22__.
That date may be past or in the near future. Time is truly of the essence in this filing where prisoners are separated unlawfully from their families and unable to contribute to their emotional and economic well-being.

1

Petitioner has furnished this Court with the BOP record of his total prison work days and his educational programming under the Act. BOP has not established a mechanism (or clear documentation as the Court can see from the attachments) for awarding credit three years after the Act was enacted into law in 2018. Petitioner has also included his earned time credit calculation, risk level, and projected early release date under the Act.

Congress passed the Act precisely to incentivize federal prisoners to engage in "productive activities" (such as prison jobs) and "programming" (education courses designed to reduce recidivism) while incarcerated with the promise that participation would lead to a hard-earned early release. Petitioner, and all prisoners similarly situated, attended the mandatory FCI intake Admissions and Orientation lectures where the Warden and the Case Managers directly promised petitioner that he would accrue earned time credits for early release if he participated (petitioner was further told the pandemic would in no way negatively effect earned time credits for a pause in prison work). In fact this promise was repeated to new prisoners again this month, while petitioner and other prisoners ready (or past due) for release have been told the credit will not be applied. It is simply unfair for respondents to now backtrack on representations that were relied on in good faith and break their promises to petitioner. Courts have looked unfavorably on BOP retroactively revising early release participation requirements years after a program was started. See Curt v. Crabtree, 113 F.3d 1081 (9th Cir. 1997).

The Act created a program to incentivize the training of important life skills through early release in a program previously not available in the federal system (though available and successful in many states and countries). The legislation prioritized those prisoners nearest their release date. The program envisioned some time for the executive agency administering it to get up to speed, but required that immediate credit be granted where education programming or prison jobs were available (literally every federal prison in the country where a prisoner is eligible to earn credit based on his low or minimum risk factor). Further, the statute specifically provides that educational programming shall count toward earned credit only while not in pre-sentencing detention and after December 21, 2018 (even though prisoners may have taken classes before that date), there is no similar provision imposing time limits on productive activities such as prison jobs, regardless of when the work days were completed or if petitioner was incarcerated in pre-sentencing detention (one prisoner at Herlong was detained four years before sentencing). The meaning of the distinction is clear and a different reading may violate the constitution.

Admittedly, the statute is a code reviser's nightmare with 11th hour amendments, interchangeably using the word "program" to equate to "programming" and distinguishing it from "productive activities," while at the same time using "program" to mean both "programming and productive activities." Petitioner asserts that if the statute is construed to deprive post-conviction pre-sentencing prisoners from applying their work in prison jobs that are acknowledged to reduce recidivism (which would make no logical sense), then that reading of the First Step Act violates the Equal Protection Clause of the 14th Amendment of the US Constitution as applied to the federal government. Prisoners working toward rehabilitating themselves through vocational work and providing income to themselves, their families and their court-imposed obligations, shall receive earned credit toward early release promoting their reintegration back into society. DOJ BOP has attempted to make distinctions among programs, programming, and productive activities where it gives them more discretion while at the same time stating they are the same thing under different provisions of the law if that interpretation helps their arguments.

18 USC 3632(d)(4)(A)(i) & (ii) state, "A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction ("EBRR") programming or productive activities." Further, assessed low or minimum risk for their last two Unit Team assessments, the prisoner who "has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation." Under 18 USC 3635(a)(1)(C)(xi), "a prison job, including through a prison work program," is a clearly defined term and unambiguous. There is no cap on the number of days that may be earned through successful participation in EBRR under the statute. Where possible the plain common usage of the statutory language shall prevail in any dispute over the meaning.

The BOP Program Statements and BOP Handbook directly and unambiguously contradict the statute and omit most prison jobs (except for jobs with private contractor UNICOR which does not operate at Herlong) and places an absolute cap lifetime(confirmed in a January 2021 phone call with BOP in Washington, DC) on the number of days allowed to be earned at 21 days of time credit earned through 62.5 days of prison work defined in the BOP Handout as 500 hours (plus 10.5 days for not increasing risk level). Further, the proposed rules by DOJ BOP attempt to limit the earning of credits so unfairly (breaking educational days into hourly fractions of each day making the meaningful accrual of credits impractical), that the Chairman and Ranking

Member of the US Senate Committee on the Judiciary wrote a joint letter on May 5, 2020, implying DOJ BOP is intentionally undermining the law. Similarly, members of both political parties of the US House Judiciary Committee took the opportunity during a subcommittee hearing to take BOP Director Michael Carvajal to task for falling far short of honoring the spirit of the legislation. In an August 2021 hearing of four cases consolidated under plaintiff Adrian Cazares in the US District Court in Oregon, the DOJ Assistant US Attorney Jared Hager went as far to argue to the Court, "prisoner has not shown entitlement to any credit" for any education completed or any work prisoner successfully accomplished the entire time he was in prison, frustrating Judge John Acosta who asked, "If HVAC work doesn't qualify, what kind of jobs do?" Evidently none. Mr. Hager said that jobs on his arbitrary list count, but should have loudly proclaimed to the court that the First Step Act is an abject failure as DOJ BOP has refused to hire educational and vocational professionals to offer training to reduce recidivism or spend the money directly appropriated to the program in legislation where Congress made it a top funding priority. Petitioner awaits their decision in the adjacent federal district. Petitioner asks this Court to order DOJ BOP to comply with the Act and offer credit for productive activities and offer rehabilitative education such as cognitive behavior modification, anger management, ending drug dependency, parenting, financial independence as Congress intended and discussed during legislative committees and chamber debate.

The US Senate joint committee letter states the legislation was clearly written to mean an inmate should get a day's credit for any educational programming or work that day, and is directly contradicted by DOJ BOP rules that state an inmate must add up the hours and minutes from multiple days to get credit for one day (BOP also inexplicably excludes many courses from credit). The Congressional leaders of both parties in both chambers, as well as multiple federal courts [DNJ 2020, DSD 2021] in decisions including Chief District Court Judge Freda Wolfson's opinion in Rabbi Aryeh Goodman v. David Ortiz, DNJ, C-20-7582, have stated that the statute makes clear all time credits earned after the statute's enactment on December 21, 2018 shall be credited to the prisoner, and the arbitrary BOP date of January 20, 2020 is counterproductive and should not be used. Further, Judge Wolfson ruled that the time credits should be applied immediately, resulting in 120 days earned credit and immediate release of the prisoner. To wait as BOP dictates until January 15, 2022 (most recently reported to be January 2023 due to Covid) would be incredibly unfair, contrary to the statutory language, self-defeating, and of no benefit to so many prisoners who have done all that was asked of them and are close to release from custody. The Act is clear; if a productive activity (a job) is available and undertaken by the prisoner before January 2020, it must be credited toward early release immediately.

4

28 USC 3621(h)(3) reads, "during the phase-in period" (before January 2022), priority opportunities should be given to prisoners closing in on their release date.

This is such a vital program to prisoners across the country, Congress in the Act directed the appropriation of $250 million ($50 million each year from 2019-2023) to put it in place (Public Law S. 756-2, Section 104(a)). The full appropriation has not gone into the program and implementation is languishing. The December 2020 Independent Review Commission stated, "BOP is falling woefully short" of following the law, while at the same time DOJ BOP is returning money appropriated under the Act. Director Carvajal did not answer at a Congressional hearing over a year ago when asked what additional resources he needed to comply with the law. Under DOJ BOP implementation, Herlong FCI has almost no opportunity to earn educational programming in any meaningful amount, and exactly NO prison jobs that qualify for credit. It is patently absurd to believe the DOJ BOP position is what Congress intended and what the courts will bless. Petitioner is aware of other inmates filing for application of the earned time credits. Petitioner is not aware of other inmates receiving credits or being released early under this program.

DOJ BOP has presented no argument in any venue against the clear statutory reading of the Act. DOJ BOP has only delayed petitioners coming before this Court to have the legal issue heard. DOJ attorneys have been aware of this issue since before December 2018, and have most likely been working on it. These issues are not new to DOJ. Indeed, the promulgation of the federal rules have been widely criticized with proposed rules contrary to the statute. DOJ strategy is to be inert, and to try to impose that on petitioner in prison while most state prison sentences are reduced through prison work and educational achievements.

Petitioner asks this Court to order DOJ to answer the petitioner within three (3) days as required under 28 USC 2243 and limit any attempted "good cause" delay by DOJ to twenty (20) as required by the statute. If DOJ breaks the law with impunity, why have a law? In fact, petitioner cannot find a single example of DOJ complying with the law. Petitioner further asks this Court to hold an expedited hearing on the facts and statutory interpretation within five (5) days of the response by DOJ as required by the same statute. The Court's deference to executive agencies stops when the government position is unreasonable or it takes no position at all after more than adequate time abdicating its authority. The DOJ delay is dilatory as DOJ tries to unjustly run out the clock on petitioner's prison sentence instead of crediting petitioner with credit days toward early release as required under the law. Absent a DOJ reply, petitioner asks this Court to calculate the earned credit days (provided by petitioner) and to release him from custody immediately if the release date

5

has already occurred. It is long past time for DOJ BOP to follow the law and not obfuscate its obligations under the Act. Petitioner's case is not an isolated example, but an example of a planned standard operating procedure.

DOJ BOP does not get to override Congress, the courts or the US Constitution, but DOJ believes it is omnipotent. In the Eastern District of Virginia, a federal judge was acutely concerned with a prisoner committing suicide, so he ordered the prisoner to FMC Butler for psychiatric evaluation. DOJ BOP refused to follow the order and the prisoner committed suicide at a local jail. Federal Judge T.S. Ellis III was enraged by DOJ BOP and excoriated them in court, "If I issue an order, you must obey it. Nobody in the BOP should ever decide they don't want to obey my order because they think it violates the law (that is what an appeal is for). I trump their view of the law." No one at DOJ BOP was disciplined or cited for contempt of court, inviting this to happen again. At the end of the day, the judge was ignored and the prisoner dead. So much for respect for the law.

Petitioner only seeks fair treatment and a better result than that observed by Judge Ellis. Finally, petitioner asks this Court to issue declaratory relief in the form of an order (1) directing BOP to immediately credit all work and credit all education programming earned after the legislation was enacted toward early release; (2) void BOP directives (statements and handbooks too) that directly contradict the legislative intent; and (3) calculate petitioner's days of credit and order BOP to credit those days toward early release and if such date has passed to immediately release the prisoner without the nonsensical 21-day outgoing quarantine period in disciplinary solitary confinement when moving from a BOP classified covid-free prison to general society where the virus is present. If the Court believes a decision is premature before January 15, 2022, petitioner respectfully asks for declaratory relief on January 16, 2022 if DOJ fails to respond as they have since February, or issues rules or directives (or policy statements) that violate the Act.

If DOJ so desires, petitioner will not object to a DOJ request to certify these issues for an expedited appeal to the US Circuit Court of Appeals for the Ninth Circuit, as this issue affects the statutory interpretation of the nationwide implementation of this important legislation. In fact, petitioner requests a circuit court ruling.

I declare and verify under penalty of perjury that the foregoing is true and correct.

Name: KAIS MOHAMMAD

Date: 11-12-21

6

CALCULATION OF EARNED TIME CREDITS FOR: KAIS MOHAMMAD 51761-509

Recidivism Risk Level: [Circle] (Minimum)  Low   Medium   High

| | |
|---|---|
| Gross Sentence in Months | 24 |
| Months of Good Conduct Time, 18 USC 3624(b) (54 days per year or 14.87%) | − 3.6 |
| Months of Elderly Offender Home Detention, 34 USC 60541(g) (2/3 of Net Good Conduct Time Sentence) | NA |
| Adjusted Sentence in Months | 20.4 |
| Good Conduct Time Release Date per www.bop.gov/inmateloc | 5-20-23 |
| Estimated Elderly Offender Home Detention Release Date | NA |
| EBRR - Evidence-Based Recidivism Reduction Days of Productive Activities (prison jobs, etc) * INCLUDES FUTURE ACCRUALS | 360 |
| Days of Programming/Programs since December 21, 2018 ( 5  Courses Completed) Not Calculated Due to BOP Confusion | N/A |
| Days of Time Credits Earned at [Circle: 10 or (15)] Days For Each 30 Days of Productive Activities or Programming | 180 |
| Projected Release Date from Incarceration [Excludes Halfway House or Mandatory Home Confinement and Elderly Offender Home Detention] | 11-20-22 |

\* Per the statute, days are calculated at 30 days of EBRR following the
  standard recognized in most states including California (& Canada)

**Individualized Needs Plan - Initial Classification (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
SEQUENCE: 02250884
Team Date: 10-31-2021
Plan is for inmate: MOHAMMAD, KAIS 51761-509

| Facility: | HER HERLONG FCI | Proj. Rel. Date: | 05-20-2023 |
|---|---|---|---|
| Name: | MOHAMMAD, KAIS | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 51761-509 | DNA Status: | HER04719 / 09-30-2021 |
| Age: | 37 | | |
| Date of Birth: | 04-18-1984 | | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| HER | A&O | A&O PARTICIPANT OR ENROLLED | 10-06-2021 |
| HER | C A&O | CAMP A&O | 09-17-2021 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| HER | GED HAS | COMPLETED GED OR HS DIPLOMA | 09-14-2021 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| NO COURSES | | | | |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 09-27-2021 |
| CARE1-MH | CARE1-MENTAL HEALTH | 10-06-2021 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| NOT MED CL | NOT MEDICALLY CLEARED | 07-19-2021 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED NONE | DRUG EDUCATION NONE | 10-04-2021 |

**FRP Payment Plan**

Most Recent Payment Plan

| FRP Assignment: | PART | FINANC RESP-PARTICIPATES | Start: 10-31-2021 |
|---|---|---|---|
| Inmate Decision: | AGREED | $75.00 | Frequency: MONTHLY |
| Payments past 6 months: | $0.00 | Obligation Balance: $300.00 | |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $300.00 | $300.00 | IMMEDIATE | AGREED |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**FRP Deposits**

Trust Fund Deposits - Past 6 months: $900.00     Payments commensurate? Y

New Payment Plan: ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 10-04-2021 |

---

**Individualized Needs Plan - Initial Classification (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
SEQUENCE: 02250884
Team Date: 10-31-2021
Plan is for inmate: MOHAMMAD, KAIS 51761-509

| Assignment | Description | Start |
|---|---|---|
| N-ANGER R | NEED - ANGER/HOSTILITY REFUSE | 10-31-2021 |
| N-ANTISO R | NEED - ANTISOCIAL PEERS REFUSE | 10-31-2021 |
| N-COGNTV R | NEED - COGNITIONS REFUSE | 10-31-2021 |
| N-EDUC N | NEED - EDUCATION NO | 10-31-2021 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 10-31-2021 |
| N-FM/PAR R | NEED - FAMILY/PARENTING REFUSE | 10-31-2021 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 10-31-2021 |
| N-MEDICL N | NEED - MEDICAL NO | 10-31-2021 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 10-31-2021 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 10-31-2021 |
| N-TRAUMA N | NEED - TRAUMA NO | 10-31-2021 |
| N-WORK N | NEED - WORK NO | 10-31-2021 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 10-31-2021 |

**Progress since last review**

Inmate MOHAMMAD arrived at FCI Herlong SCP on 09-07-2021.

**Next Program Review Goals**

Complete Criminal Thinking through Psychology. Obtain an original or certified copy of your birth certificate and obtain your social security card.

**Long Term Goals**

Submit a resume to your Case Manager by 03/2023.

**RRC/HC Placement**

Recommended Placement on date 03-09-2023.
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources
- Offense
- Prisoner
- Court Statement
- Sentencing Commission

Inmate was individually assessed for extended RRC placement and Home Detention using the 2nd Chance Act criteria, a date of 03-09-2023, for Direct Home Confinement is recommended. If unavailable, the same date is recommended for RRC placement.

**Comments**

Inmate MOHAMMAD plans to work in reselling items after release.

RICHARD J. DURBIN, ILLINOIS, CHAIR

PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII
CORY A. BOOKER, NEW JERSEY
ALEX PADILLA, CALIFORNIA
JON OSSOFF, GEORGIA

CHARLES E. GRASSLEY, IOWA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JOSHUA D. HAWLEY, MISSOURI
TOM COTTON, ARKANSAS
JOHN KENNEDY, LOUISIANA
THOM TILLIS, NORTH CAROLINA
MARSHA BLACKBURN, TENNESSEE

# EXHIBIT 2

**United States Senate**

COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510-6275

May 5, 2021

The Honorable Merrick Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Garland:

We respectfully request that you direct the Bureau of Prisons (BOP) to expeditiously revise the proposed rule published on November 25, 2020, regarding earned time credits authorized by the First Step Act of 2018 (FSA). As proposed, the rule severely limits the incentive structure designed to increase program participation and would undercut the effectiveness of the FSA. We ask that you reevaluate and amend the rule consistent with the statute's goals of incentivizing and increasing program participation to reduce recidivism.

The proposed rule undermines the FSA's incentive structure in several respects. First, by defining a day as eight hours of programming the rule greatly restricts the ability to earn credits. Under the FSA, eligible inmates "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming [EBRR] or productive activities [PAs]." While not statutorily defined, the plain meaning of a day of participation is every calendar day during which a person successfully participates in an EBRR or PA, with the length of participation determined by the program. Instead, the proposed rule defines a day as "one eight-hour period" of a completed EBRR or PA. Using this definition, an inmate who participates in a program one hour a day for eight days would earn just one "day" of participation under the FSA. Given the limited programs offered and the duration and frequency of programs, earning enough time credits to meaningfully reduce prison time would be nearly impossible under this definition.

Second, the proposed rule allows credits to be earned only for programs that were assigned and completed after January 15, 2020, more than two years after the FSA's date of enactment. The FSA does not require BOP to limit earned time credits to completion of *assigned* programming. BOP's inclusion of this limitation in the proposed rule is particularly troublesome because BOP has not developed an effective needs assessment, as required by the FSA. Under the proposed rule, inmates would not be rewarded for self-identifying needs and voluntarily participating in programming. The proposed rule also, without authority or explanation, prohibits credits for programs completed before January 15, 2020, when the FSA allows for credits based on all programming completed after the statute's enactment on December 21, 2018.

Third, the FSA directs that all eligible federal prisoners in BOP custody shall earn credits for program participation, but the proposed rule would exclude prisoners in residential reentry centers (RRCs) or home detention. Because prisoners in RRCs and home detention are in BOP custody, the rule is contrary to the FSA. In fact, the FSA specifically anticipated that prisoners on home detention would continue to participate in programming by listing program participation as one of a few authorized reasons prisoners may leave home while on detention.

Finally, we are concerned that the proposed rule's penalties are unduly harsh. The rule proposes that inmates may lose earned time credits "for violations of prison rules, or requirements and/or rules of an [EBRR or PA]," applying the same procedures used for loss of good time credits. Especially when combined with the time required to earn credits under the proposed rule, the penalty for violations would be too severe. For example, one unexcused absence from a work assignment could result in the loss of 30 days of earned credits, although earning those credits would require completing 720 hours of programming. The rule also imposes penalties for violations of program requirements, rather than just violations of "prison rules or [EBRR or PA] rules," as the FSA requires, suggesting that failure to fulfill the requirements of a program not only could result not only in a failure to earn time credits for participation, but also the loss of credits previously earned.

While losing hard-earned credits would be easy, the rule makes restoring credits too difficult. The FSA simply requires "a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress." However, the proposed rule would only allow for restoration after "clear conduct for at least four consecutive risk and needs assessments." These assessments may only be completed annually, so it could take a prisoner at least four years to restore lost credits, longer than the average sentence.

For these reasons, we ask that you direct BOP to expeditiously revise the proposed rule consistent with the comments above. Establishing robust programming and a fair system to earn time credits is critical to meeting the FSA's goal of reducing recidivism.

Thank you for your time and consideration. We look forward to your prompt response.

Sincerely,

Richard J. Durbin
Chair
U.S. Senate Committee on the Judiciary

Charles E. Grassley
Ranking Member
U.S. Senate Committee on the Judiciary